ISAAC R. SINCLAIR, APPELLANT, v. WILLIAM E. DUNNING,
APPELLEE.

FILED APRIL 3, 1915.   No. 18083.

1. **Appeal:** CONFLICTING EVIDENCE. The verdict of a jury rendered on conflicting evidence, where the issues have been submitted under proper instructions, will not be set aside by a reviewing court unless it appears to be clearly wrong.

2. **Instruction** complained of, set forth in the opinion, and *held* to have been properly given.

APPEAL from the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Dravo & Dilworth,* for appellant.

*G. Norberg* and *Ralph E. Adams, contra.*

BARNES, J.

Action to recover damages alleged to have been sustained by plaintiff by reason of the fraud and deceit of defendant in the exchange of 148 acres of land situated in Nance county, Nebraska, for a stock of merchandise in Eustis in said state. The cause was tried to a jury in the district court for Phelps county. The defendant had a verdict and judgment, and plaintiff has appealed.

The plaintiff alleged in his petition that in the negotiations leading up to the trade the defendant told him that his land was worth $100 an acre, and that he had been offered $95 an acre for it; that plaintiff could obtain a loan on it for $6,000 from a widow in St. Edwards, Nebraska, by the name of Elberta Cain. Plaintiff alleged

that he had no knowledge of the value of the land and relied on the defendant's statements, which induced him to make the trade; that said statements were false and untrue, which fact was well known to defendant at the time they were made; that the land was not worth more than $35 an acre; that after plaintiff traded for the land he was unable to obtain a loan of $6,000 thereon, and that, by reason of the fraud and deceit practiced on him by defendant, he had been damaged in the sum of $10,061, for which he prayed judgment.

The defendant, by his answer, admitted that he traded the land in question for the stock of merchandise mentioned in plaintiff's petition, but denied that he made the representations set forth therein, and alleged that the trade was made after plaintiff had visited the land and had examined it to his own satisfaction, and after he had made inquiries of other persons who resided in the vicinity where the land lay. He further alleged that the stock of merchandise which he took in trade for the land was what is known as "trading stock;" that he told plaintiff that he wanted $14,800 for his land, and that plaintiff must allow him that amount in case they made the trade. He denied that he ever told plaintiff that Elberta Cain would loan him $6,000 on the land, and alleged that he informed plaintiff that he probably could obtain a loan from a widow named Cain, living at St. Edwards, Nebraska, for 40 per cent. of the actual value of the land. Further answering, defendant denied all of the other allegations of the petition.

Plaintiff, by his reply, denied the material allegations of the answer.

The appellant contends that the verdict of the jury is not sustained by the evidence. The bill of exceptions discloses that in the latter part of April, 1910, the parties, who both appear to have been traders of land for stocks of merchandise, met, and negotiations were entered into which led up to the trade out of which this action afterwards arose. Plaintiff wanted to know if defendant had land which he would trade for a stock of goods. It appears

that defendant had a fractional quarter section of land, containing 148 acres, in Nance county, which he was willing to trade for plaintiff's stock of goods. He told plaintiff to go down there and examine it. They thereupon fixed a date when they should go to Nance county for that purpose. When they arrived at Palmer, which is a small town in Merrick county near the tract of land in question, they drove out and examined it. The plaintiff was satisfied with the appearance of the land, and on the trial testified that defendant told him it was well worth $100 an acre, while the defendant just as positively testified that he never said it was worth that or any other sum; that he did say that he wanted $14,800 in trade, and that plaintiff could take it or let it alone. Plaintiff testified that defendant told him he could get a loan of $6,000 on the land; that defendant referred him to Elberta Cain, who, it appears, was the mother-in-law of defendant's daughter. Defendant testified positively that he never told plaintiff he could get a loan of $6,000 on the land, but that he told plaintiff that he could probably get a loan of 40 per cent. of the actual value of the land, and referred plaintiff to a widow by the name of Elberta Cain, living at St. Edwards, Nebraska, who was loaning money on real estate,

It appears that when the parties returned from inspecting the land plaintiff made inquiries regarding it of a Mr. Templin, a banker at Palmer who owned land adjoining it, and thereafter requested that he be given a little time to consider the matter of the trade. This was agreeable to the defendant. It also appears that the plaintiff wrote to Elberta Cain and received an answer as follows:

"May 9, 1910. Dear Sir: Yours of May 6 received and think the land you asked about is fully worth what Mr. Dunning asked as it is a great hay producer. I know where all the land is located but do not know the numbers. I would be pleased to make a loan on the land. Would loan 40% of actual purchase price at 6% annually. However, if there is already some incumbrance I would have

to pay it off and deduct from the amount. Mrs. Elberta Cain. P. S. If I could do anything for you in way of a loan let me know as soon as possible."

There is another letter in the record from Mrs. Cain, which reads as follows: "St. Edwards, Neb., May 25, 10. Mr. Sinclair, Smithfield, Neb. Dear Sir: Yours rec'd. Will look over the land and write you as soon as possible. Most Resp., Mrs. Elberta Cain."

Plaintiff testified that after the receipt of these letters he wrote again to Mrs. Cain and received no answer, but it is not shown that he ever made any application for a loan on the land after he procured it.

In the latter part of May, 1910, the parties got together and completed the trade. The defendant's land was considered to be worth $14,800 in the trade. An inventory of the stock of goods was taken, with the result that it was considered to be worth $17,509.99. Defendant gave a note to the plaintiff for the difference, less the amount of certain bills of wholesalers which he assumed and agreed to pay, and the plaintiff gave the defendant a bill of sale for the stock of merchandise, and defendant deeded the land to L. L. Sinclair, who is a son of the plaintiff. Later on the plaintiff sold the note to a bank in Bertrand, and nothing further was heard about the transaction until the commencement of this suit, which was something like two years after the trade was completed.

At the trial the plaintiff produced a writing, signed by the defendant, which contained a statement of the bills which the defendant assumed and agreed to pay, all of which were entered on the left-hand side of the double line on a page of a double-entry ledger and amounted in all to $748.48. This list of accounts the defendant assumed and agreed to pay and appended his signature thereto. When this writing was introduced in evidence, there appeared on the right-hand side of the double-entry column the following:

"Assumed by W. E. Dunning. I hereby agree to give clear title to said land and guarantee a loan of $6,000 on said land by Alberta Cain of St. Edwards, Neb. And also

guarantee full face at First National Bank at Bertrand for difference on note given on said stock of merchandise and I hereby assume the above bills."

The defendant contended that the writing on the right-hand side of the double-entry column was not there when he appended his signature to the bills which he had assumed and agreed to pay. He testified to this positively, and several other witnesses who were present when the writing was signed testified that the writing at the right of the double-entry column was not there when the defendant signed it. The plaintiff denied this, and claimed that it was all written and signed at the same time. It is quite probable that the jury believed the defendant's testimony, and, if so, the belief would go far to sustain the verdict which they rendered. The evidence shows that the land was not worth to exceed $35 or $40 an acre at the time the trade was made. It was good hay land and afforded a hay crop amounting from year to year to from 90 to 180 tons. The testimony as to the value of the stock of goods was conflicting. There was considerable evidence which showed that the bulk of the stock was old and considerably shelf worn. The note which defendant gave to the plaintiff at the time of the completion of the trade, and which amounted to $2,071, was cashed by the plaintiff. There is no evidence in the record from which the jury could conclude that the plaintiff had ever offered to rescind the trade. On the other hand, it seems clear that plaintiff induced the defendant to make the deed, not to himself, but to his son, who took possession of the land, and, so far as the record shows, still owns it. There is a sharp conflict in the evidence as to the representations alleged to have been made by the defendant relating to the condition and value of the land, and also as to the facts relating to the whole transaction. The cause having been properly submitted to the jury upon such conflicting evidence, we are unable to say that it was not sufficient to sustain the verdict.

It is further contended that the trial court erred in excluding the evidence offered by plaintiff in relation to his

offer to rescind the contract. When it is considered that this was not an action for rescission, but was one affirming the contract and seeking to recover damages for fraud and deceit, it must be apparent that such offer was wholly immaterial, and this evidence was properly excluded.

It is also contended that the court erred in giving the eighth paragraph of his instructions to the jury, which reads as follows: "The court instructs you, gentlemen of the jury, that no evidence has been offered by plaintiff tending to show any damages he may have sustained by reason of not having obtained a loan on the real estate in question for $6,000, which plaintiff claims he is entitled to recover. In determining the amount of his recovery you will not take into consideration any damages resulting from the failure of the plaintiff to secure said loan." It clearly appears from the record that the plaintiff never applied to any one for a loan on the land in question. As above stated, he induced the defendant to deed the land to his son, who, so far as the record shows, still owns it, and who has never made any complaint in regard to the transaction. The instruction complained of was properly given.

As we view the record, the cause was fairly tried and submitted to the jury under proper instructions. The judgment of the district court is therefore

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.